# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| RICHARD LAVELLE WALKER<br>          LA. DOC #322288 | CIVIL ACTION NO. 3:14-cv-2882 |
| VS. | SECTION P |
| | JUDGE ROBERT G. JAMES |
| JAY RUSSELL, ET AL. | MAGISTRATE JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Pro se plaintiff Richard Lavelle Walker, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on October 3, 2014. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections; he is incarcerated at the Caldwell Correctional Center. When he filed his complaint, he was a prisoner at the Ouachita Corrections Center (OCC). He complained that while incarcerated at that facility, his right to practice his chosen religion was interfered with by the defendants, as was his right to access magazines. He claimed that he was otherwise discriminated against because of his race, and he complained about the underwear provided to him by the prison. He sued Sheriff Jay Russell and various corrections officials at OCC praying for $150,000 in compensatory damages for "mental health care from my dreams ... counselling and anger management to my hatred attitude behind this administration and guards denying access to practice my religion..." and for the termination of the defendants from their "duties and positions." This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a

claim for which relief may be granted.

### *Statement of the Case*

Plaintiff complained that while incarcerated at OCC he was not able to practice his chosen religion, Islam.  He claimed that he was advised that OCC would not provide any services, but that once he was assigned to the custody of the Department of Corrections, he could be transferred to a prison that offered Muslim services. He claimed he was also advised that the prison administration had previously sought the services of an Imam, or Muslim clergyman, however, the closest Imams lived in New Orleans and travel expenses were deemed prohibitive. When plaintiff submitted a formal grievance on this issue he was advised, "OCC is not trying to force religion on any inmate here. Unfortunately we do not have the facility for inmates to gather to practice their faith whether it be Muslim or Christian. That's why the minister comes into the dorm. We have reached out to Muslim Imams in the past but we can't get Muslim volunteers to come here for one or two people. If you want to be moved to a dorm where you can go into your cell during Christian services, we will accommodate you." [Doc. 1-1, p. 1] When he appealed his grievance he was advised, "Mr. Walker you proclaimed during the booking process that you are non-denominational. Chaplain Ross has many religious volunteers that visit our dorms several days a week. The Black supervisors have nothing to do with your expression of religion..."

Plaintiff also complained that he and his fellow African-American inmates are being discriminated against, because while white inmates may "... receive their choice of magazines excluding pornography, the mail lady Mrs. Rosetter will not allow black inmates to receive black published magazines such as XXL Vibe Hip Hop based magazines ... and the Beauty of the Week is always cut out of them upon receiving it..." He complained that Rosetter also banned Jet

Magazine although white inmates could receive Hot Rod Bike Magazine and Hot Rod Car and

Truck Magazine both of which display women in bikinis.

Plaintiff complained about the condition of the underwear that is provided to him.

He complained that while he is supplied free toilet paper, he is also provided soap, razors,

deodorant and toothpaste but must "create debt" with the facility to receive said items. He then

provided a receipt indicating that when money was received from outside sources, the prison

used those funds to offset his debt.

Plaintiff also provided a series of grievances and responses, however, the grievance

portion is incomprehensible. In fact, the prison administration's response to the grievance was as

follows, "Your ARP is not saying what problem you need help with. Be specific as to what your

question is. What problem do you have?" The second step response confirmed the absence of a

specific complaint and noted, "Your opinion is just that and everyone has one. This jail is run

professionally and your rants are not changing our rules and regulations. No problem found."

[Doc. 3]

### *Law and Analysis*

### *1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner

seeking redress from an officer or employee of a governmental entity, his  complaint is subject to

preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80

(5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also

subject to screening under § 1915(e)(2).  Both § 1915(e)(2) (B) and §1915A(b) provide for *sua*

*sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or

malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke*

*v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based

on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon

which relief may be granted when it fails to plead "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v.*

*Iqbal,* 556 U.S. 662, 678 (2009).

### 2. Practice of Religion

Plaintiff implies that the defendants violated his First Amendment right to freely practice

Islam. Inmates retain Constitutional protections against interference with their religious

practices.   Nevertheless, lawful incarceration, by its very nature, brings about the necessary

withdrawal or limitation of many privileges and rights. The limitations on the exercise of

constitutional rights arise both from the fact of incarceration and from valid penological

objectives.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282

(1987).

The standard for evaluating an inmate's claim that a prison regulation or practice

improperly restricts his right to the free exercise of his religion requires the court to evaluate the

regulation or practice in order to determine whether it "is reasonably related to legitimate

penological interests." *Id.* at 349.  The "reasonableness" of a regulation or practice is evaluated

based upon the following inquiry: (1) Is there a valid, rational connection between the prison

practice and the legitimate governmental interest put forward by prison officials to justify the

practice;  (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level;  (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Plaintiff claims that he is a Muslim. However, he does not allege how he is prohibited from practicing this religion by the defendants.  Indeed, it appears that he faults the defendant for failing to provide him access to a community of his co-religionists and/or, access to ministers trained in the precepts and tenets of his religion.  However, the available evidence suggests that the demographics of north Louisiana, and not prison regulations, are responsible for his inability to engage in worship services as part of a wider congregation.

In any event, it must be noted, that with regard to the first prong of the *Turner* test, plaintiff has not alleged that prison officials have underlined prohibited him from practicing his religion. As previously noted, the second and forth prongs of the *Turner* test, address whether or not "alternative means" of practicing his religion have been made available to the plaintiff.  In analyzing the availability to inmates of "alternative means" of exercising their religion, however, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to

exercise their faith." *Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 861 (5th Cir.2004); *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004).  Plaintiff has not claimed that he was denied the right to exercise his faith; rather he claims that his rights are violated because there are few or no other co-religionists housed at OCC  and there is no access to an Imam or minister of that faith. As noted above, this fact cannot be attributed to the defendants and does not prohibit him from practicing his religion.

Plaintiff is again reminded, prison administrators are obliged only to provide inmates with "reasonable opportunities ... to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments." *O'Lone v. Estate of Shabazz* at 322 n. 2, 92 S.Ct. 1079.  In short, plaintiff's First and Fourteenth Amendment claims are frivolous.

Plaintiff also implies a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA)  [see 42 U.S.C. §2000cc *et seq*.].  RLUIPA mandates that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

The Supreme Court has noted that RLUIPA protects the rights of prisoners who are unable to freely attend to their religious observances and who are dependant on the government's permission and accommodation. *Cutter v. Wilkinson*, 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

Case 3:14-cv-02882-RGJ-KLH Document 9 Filed 01/08/15 Page 7 of 10 PageID #: 53

In order to state a claim under RLUIPA, the prisoner must show that challenged government action places a <u>substantial burden</u> on the exercise of his religion. If the prisoner carries the burden of proof on this issue, then the government must demonstrate some compelling interest warranting the challenged action. Under RLUIPA, a "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id. §* 2000cc-5(7)(A). Thus, religious services, religious education, and dietary principles all qualify as "religious exercises."

While the statute does not define "substantial burden," Fifth Circuit jurisprudence has defined it as follows in the context of the RLUIPA, "... a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) at 569-70.

Plaintiff has alleged insufficient facts to establish a violation of RLUIPA and that claim must also be dismissed as frivolous.

### 3. Magazines

Plaintiff claims that certain magazines are prohibited by prisoner administrators. He does not, however, allege that he is the subscriber or the recipient of these magazines. Indeed, given his claim of indigence, it is highly unlikely that he has subscribed to the prohibited magazines.

The jurisdiction of a federal court may be invoked when a plaintiff has suffered some threatened or actual injury as a result of an allegedly unconstitutional action. The judicial powers given to federal courts under Article III of the United States Constitution exist only to redress or protect against injury to a complaining party. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45

L.Ed.2d 343 (1975).

Therefore, in order to have "standing"[1] to bring a claim in a federal court, a plaintiff must allege actual or threatened "injury in fact, economic or otherwise." *Association of Data Processing Orgs. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Plaintiff lacks standing with regard to his claim concerning the denial of various hip hop magazines and his claim must be denied for failing to state a claim for which relief may be granted.

### 4. Underwear

Plaintiff complained that the underwear provided by the prison to indigent inmates is stained and worn. Complaints about prison conditions are analyzed under the Eighth Amendment which proscribes cruel and unusual punishment.  While the Eighth Amendment does not prohibit punishment it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Additionally, while  the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999).  "For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture,

---

[1] "Standing defies precise definition, but at the least insists that the complained of injury be real and immediate rather than conjectural, that the injury be traceable to the defendant's allegedly unlawful conduct, and that relief from the injury must be likely to follow from a favorable ruling." *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir.) (*en banc*), *cert. denied*, 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 135 (1992)."

it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

To rise to the level of a constitutional violation, the conditions must be " 'so serious as to deprive [plaintiff] of the minimal measure of life's necessities... '"*Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir.2003) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995)). Thus,  in order to prevail on such a claim, the plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*. *See Siglar v. Hightower*, 112 F.3 191, 193-94 (5th Cir.1997); *Alexander v. Tippah County, Miss*, 351 F.3d at 630-31; *Luong v. Halt*, 979 F.Supp. 481, 486 (N.D.Tex.1997).  Plaintiff has alleged no harm resulting from the alleged violation. Plaintiff's complaint simply does not rise to the level of an Eighth Amendment violation and is frivolous as a matter of law.

### 5. Payment for Hygiene Products

Finally, plaintiff complains that while personal hygiene products are provided to indigent inmates, a debt is incurred that may be satisfied upon the receipt of funds by the inmate. Plaintiff has not demonstrated how this practice is in any way violative of the Constitution and laws of the United States and therefore he fails to state a claim for which relief may be granted.

### Conclusion and Recommendation

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

In Chambers, Monroe, Louisiana, January 8, 2015.

_____
**KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE**